UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE: )
) Case No. 21-15331-TBM
PEAK CUSTOM FABRICATION, INC., )
) Chapter 11, Subchapter V
)
Debtor. )

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL

The Debtor and Debtor in Possession, Affordable Concrete, LLC ("Debtor"), by and through its attorneys, Kutner Brinen Dickey Riley, P.C., moves the Court pursuant to 11 U.S.C. § 363(c)(2) and Bankruptcy Rules 4001(b) and 9014 for entry of an order authorizing the Debtor's use of cash collateral, setting a final hearing on the use of cash collateral, and providing adequate protection to properly perfected secured creditors, and as grounds therefor states as follows:

### BACKGROUND

1. The Debtor filed its Voluntary Petition pursuant to Chapter 11, Subchapter V, of the Bankruptcy Code on October 21, 2021 ("Petition Date"). The Debtor remains a debtor in possession and is in operation of its business pursuant to 11 U.S.C. §§ 1107, 1108 and 1182(2).

2. The Debtor is a Colorado corporation engaged in business as a steel fabricator contractor and steel erection provider for commercial and industrial construction projects.

*A. Parties with Interests in Accounts and Accounts Receivables*

3. Pre-petition, on or about January 11, 2021, the Debtor entered into a Loan Authorization and Agreement, Promissory Note, and Security Agreement (together with all amendments thereto, the "Loan Documents") with the United States Small Business Administration ("SBA") for a secured disaster loan in the original principal balance of $150,000.

4. In accordance with the Security Agreement, the Debtor granted the SBA a secured interest in substantially all of the Debtor's assets, including its inventory, equipment, accounts, deposit accounts, and accounts receivables.

5. The SBA duly perfected its interest by filing a UCC-1 financing statement with the Colorado Secretary of State on January 25, 2021, Document No. 20212007234.

1

6. As of the Petition Date, the Debtor's books and records reflect that the SBA is owed $149,900, plus accrued interest on account of its secured claim.

7. Pursuant to C.R.S. § 38-22-127 ("Trust Fund Statute"), certain of the Debtor's funds and accounts are subject to a statutory trust in favor of subcontractors, material suppliers, and laborers ("Trust Funds"). The imposition of the statutory trust on certain of the Debtor's funds and accounts gives trust fund claimants an interest in the Trust Funds ahead of any secured creditors, and such funds are not assets of the Debtor's estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990); *First Commercial Corp. v. First Nat'l Bancorporation, Inc.*, 572 F. Supp. 1430, 1435 (D. Colo. 1983)("An unsecured supplier claiming an interest under this Act takes priority over a prior perfected security interest in all present and future accounts receivable and proceeds of accounts.").

8. In accordance with C.R.S. § 38-22-127(c), a statutory trust is not imposed on funds from construction projects where a performance or payment bond has been furnished by the Debtor.

9. As a result of the Trust Fund Statute, the SBA's interest in the Debtor's accounts and accounts receivables is limited to the extent such funds result from contract where a bond has been furnished, or to the extent the Debtor has received funds or has a receivable for amounts in excess of the amounts necessary to pay all subcontractors, material suppliers, or laborers in full.

10. In addition to the secured claim of the SBA and the trust fund claimants, UCC-1 Financing Statements have been filed by the Debtor's bonding companies, United Fire Group ("UFG") and the Cincinnati Insurance Company ("CIC"), asserting a security interest in the proceeds from certain construction projects pursuant to General Indemnity Agreement entered into by the Debtor as a condition of furnishing the bond.

**B. Assets on the Date of Filing**

11. The Debtor's primary assets are its accounts receivables which are used to pay subcontractors, material suppliers, and laborers as well as funding operations. On the Petition Date, the Debtor had receivables in the amount of $824,710.39 ("Trade Receivables"), which the Debtor believes may be subject to claims arising under the Trust Fund Statute and adjustments for doubtful or uncollectible accounts. The Debtor also has a receivable balance in the amount of $938,429.47 for retainage amounts withheld until completion of the projects and expiration of any warranty periods ("Retention Receivables").

12. On the Petition Date, the Debtor also had cash on hand and in accounts in the amount of approximately $74.637.15.

13. To the extent the funds in the Debtor's account represent funds held pursuant to the Trust Fund Statute, such funds may be subject to claims of material suppliers and subcontractors.

14. The Debtor is replacing its cash in account, Trade Receivables, and Retention Receivables in the ordinary course of business.

15. The Debtor does account for its various projects on a case by case basis. On each project the Debtor may be operating at a loss, will generate a gain, or the project is uncertain due to the pending nature of change orders and contract amendments. The Debtor is determining on a project basis whether its collections are Trust Funds or cash collateral.

16. The Debtor must use cash collateral to continue its business operations post-petition and maintain its inventory. If the Debtor is not able to use cash collateral to continue to operate in the ordinary course of business, the Debtor will be forced to cease operations, resulting in the Debtor losing its contracts and being replaced by new contractors. If the Debtor is replaced by a new contractor, amounts owed to the Debtor will instead be used to pay contractors hired to replace the Debtor, resulting in significant decrease in the value of the accounts receivables.

17. Unless the Debtor is authorized to use cash collateral, the Debtor will suffer irreparable harm and injury from the inability to maintain operations.

18. The Debtor is replacing its accounts, cash, and inventory in the ordinary course of its operations on a daily basis.

19. The use of Trust Funds to pay material suppliers and subcontractors does not constitute use of cash collateral on those specific projects where the Trust Fund Statute applies and there is no payment or performance bond.

## RELIEF REQUESTED

20. The Debtor plans to continue operation of its business throughout the Chapter 11 case and propose a Plan of Reorganization which provides for the continuation of the Debtor's business. It is only through a Plan that unsecured creditors will see a recovery on account of their claims.

21. In order to pay necessary operating expenses, the Debtor must immediately use cash collateral in which the SBA, UFG, or CIC (collectively the "Secured Creditors") may have

an interest. The Debtor proposes to use cash collateral on an interim basis until such time as the Court schedules a final hearing on the use of cash collateral. At the final hearing, the Debtor will seek relief to use cash collateral during the term of this Chapter 11 proceeding.

22. The majority of the Debtor's revenues and available cash are derived from its construction projects. Without the use of cash collateral, the Debtor will have insufficient funding for business operations. Therefore, the Debtor's use of cash collateral during the interim period is necessary to avoid immediate and irreparable harm to the estate. Without the use of cash collateral, the Debtor will not be able to pay employees, rent, utilities, materials and other costs associated with the performance of its construction contracts.

23. The Debtor will be replacing its accounts, cash, and cash equivalents in the course of its daily operations and therefore the collateral base will remain stable and will improve over time. The Debtor's cash position is projected to be positive after meeting expenses during the term of the Chapter 11 case.

24. In order to provide adequate protection for the Debtor's use of cash collateral to secured creditors, the Debtor has proposed adequate protection for the Secured Creditors or any other creditor with a lien on cash collateral as set forth below. The proposal provides the following treatment on account of cash collateral:

    a. The Debtor will provide the Secured Creditors with a post-petition lien on all post-petition accounts receivable and contracts and income derived from the operation of the business and assets, to the extent that the use of the cash results in a decrease in the value of the Secured Creditors' interest in the collateral pursuant to 11 U.S.C. § 361(2). All replacement liens will hold the same relative priority to assets as did the pre-petition liens;

    b. The Debtor will only use cash collateral in accordance with the Budget attached to this Motion as Exhibit A subject to a deviation on line item expenses not to exceed 15% without the prior agreement of the Secured Creditors or an order of the Court;

    c. The Debtor will keep all of the Secured Creditors' collateral fully insured;

    d. The Debtor will provide the Secured Creditors with a complete accounting, on a monthly basis, of all revenue, expenditures, and collections through the filing of

the Debtor's Monthly Operating Reports; and

  e. The Debtor will maintain in good repair all of the Secured Creditors' collateral.

25. Should the Debtor default in the provision of adequate protection, the Debtor's approved use of cash collateral will cease and the Secured Creditors will have the opportunity to obtain further relief from this Court.

26. Since most of the secured creditors with a lien on cash collateral will be able to collect from ongoing contract revenues and since those revenues will be cut off if the Debtor is not allowed to continue in business performing on its contracts, the only way the bulk of the receivable revenue will be collected is through continued operations. Continued operations require the ongoing use of cash collateral. By way of example, if the Debtor stops work on a project where there is an account receivable, the Debtor will likely lose the right to collect the receivable if it is no longer able to perform on the underlying contract. The general contractor will exercise its right to obtain substitute performance from an alternate subcontractor at what will inevitably be a higher price and deduct all costs and expenses from monies due the Debtor.

27. The Debtor's request to use cash collateral is made with a complete reservation of rights of secured creditors to their various claims and lien positions in and to the Debtor's assets.

28. Approval of the Debtor's use of cash collateral in accordance with this Motion is, on an interim basis and a final basis, in the best interest of the Debtor, its creditors and the estate as it will allow the Debtor to maintain its ongoing business operations, allow the Debtor to generate revenue, and provide the Debtor with an opportunity to propose a meaningful Plan.

## RELIEF REQUESTED ON AN INTERIM EMERGENCY BASIS

29. Without the immediate use of cash collateral, the Debtor will not be able to fund ongoing business operations. The Debtor is filing a separate motion requesting an expedited entry of an order approving the interim use of Cash Collateral pursuant to this Motion.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, authorizing the Debtor's use of cash collateral in accordance with this Motion, authorize the Debtor to provide adequate protection to the secured creditors with an interest in cash collateral in the form of that set forth herein, and for such further and additional relief as to the Court may appear proper.

DATED: October 22, 2021                     Respectfully submitted,

By: __/s/ Keri L. Riley__
Keri L. Riley, #47605
**KUTNER BRINEN DICKEY RILEY, P.C.**
1660 Lincoln Street, Suite 1720
Denver, CO 80264
Telephone: (303) 832-2400
E-mail: klr@kutnerlaw.com